## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between GALENA LOPEZ ("Lopez" or "Plaintiff"), and S & S LOGISTICS, INC., RAFAL CYMERKIEVICZ, SEBASTIAN POWROZNIK NENAD JOVANOVIK and VERCE KOCEVA (collectively "Defendants"), (Plaintiff and Defendants collectively referred to herein as the "Parties").

## RECITALS

**WHEREAS**, Plaintiff filed an action, Case No. 22-cv-4305, which is currently pending in the United States District Court for the Northern District of Illinois. Plaintiff's Complaint asserts claims for alleged violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL") (hereafter "the Federal Lawsuit"), breach of contract and the Illinois Wage Payment and Collectioon Act (IWPCA), hereafter, "the Federal Lawsuit".

**WHEREAS**, to avoid incurring further burdens, expenses, and costs of the Federal Lawsuit, and without Defendants admitting to any liability, the purpose of this Agreement is to amicably settle fully and finally the Federal Lawsuit and the claims pled therein at any time during the Federal Lawsuit, as set forth in more detail in Section 3 of this Agreement, and those claims that could have been so asserted under the FLSA and IMWL, which might be brought pursuant to the facts alleged in the Federal Lawsuit or related to the facts alleged in the Federal Lawsuit by Plaintiff; and a violation of the Illinois wage payment and collection Act (IWPCA).

**WHEREAS**, entry into this Agreement by Defendants is not considered an admission of liability on their part. Defendants denied and continue to deny all of the allegations asserted in the Federal Lawsuit; deny that they violated any federal, state or local law including but not limited to the FLSA and IMWL; deny the allegations in the Federal Lawsuit including, but not limited to, the allegations Plaintiff raised in her Complaint, or could have raised, in the Federal Lawsuit; and deny that they are liable or owe unpaid wages and/or damages to Plaintiff (or anyone else) with respect to the alleged facts or causes of action asserted at any time in the Federal Lawsuit; nonetheless, without admitting or conceding any liability or damages whatsoever, as a business decision to avoid the fees and costs involved in further litigation, Defendants agree to settle the Federal Lawsuit on the terms and conditions set forth in this Agreement; and

**WHEREAS**, Plaintiff's Counsel (Glenn Gaffney and Gaffney & Gaffney PC) among other things, analyzed and evaluated the merits of the claims made against Defendants in the Federal Lawsuit, conducted interviews with Plaintiff, engaged in informal discovery including reviewing payroll records, engaged in substantial settlement discussions, and given the substantial risks of litigation, including the possibility that the Federal Lawsuit, if not settled now, might not result in any recovery or might result in a less favorable recovery, Plaintiff's Counsel and Defendants' counsel are both satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Parties.

**WHEREAS**, the Parties have agreed to fully and finally settle, compromise and resolve all issues between them including but not limited to all issues arising out of or in connection with

the Federal Lawsuit.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein, as well as the good and valuable consideration and for the mutual covenants, agreements and undertakings set forth herein, the receipt, adequacy, and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree to a full and complete settlement of the Federal Lawsuit on the following terms and conditions, as follows:

**1. SETTLEMENT TERMS.**

    1.1    **Settlement Payment**. In exchange for Plaintiff's promises as described in this Agreement, this matter is fully and completely settled with payment by of Defendants in the total gross amount of $90,000.00 (Ninety Thousand and 00/100 Dollars) ("the Settlement Payment"), to be made beginning after the Court grants the parties' joint motion for approval of this Agreement and dismisses the case without prejudice, and with payment to be made in the form of checks made payable as follows and delivered to Plaintiff's counsel, Glenn Gaffney, Gaffney & Gaffney PC, 1771 Bloomingdale Rd #2, Glendale Heights, IL 60139. Defendants, jointly and severally, shall make the following payments pursuant to the following payment schedule:

    1.2    Defendants shall make the following payments on or before the dates herein stated:
- a. $25,000 on or before April 15, 2024;
- b. $5,400 on or before May 1, 2024;
- c. $5,400 on or before June 1, 2024;
- d. $5,400 on or before July 1, 2024;
- e. $5,400 on or before August 1, 2024;
- f. $5,400 on or before September 1, 2024;
- g. $5,400 on or before October 1, 2024;
- h. $5,400 on or before November 1, 2024;
- i. $5,400 on or before December 1, 2024;
- j. $21,800 on or before January 1, 2025.

    1.3    All payments shall be made by electronic deposit to the client escrow IOLTA account of Gaffney & Gaffney PC at JPMorgan Chase Bank, NA - Routing # 071000013, Account # 862866514.

    1.4    Any of the following shall be considered a "Material Breach":
- a. The failure to make two or more payments by the 15th of any month;
- b. The failure to make any one payment by the 21st of any month.
- c. The failure to make the January 1, 2025 payment by January 5, 2025.

    1.5    Plaintiff's remedies for any Material Breach shall be the following:

2

      a. Interest shall begin to run on the entire remaining amount due at the rate of 5% per month as per the IMWL and the IWPCA;
      b. Plaintiff may file a notice and motion before the Court to vacate the dismissal and enforce this Agreement through the Court's inherent equitable powers to enforce approved settlement agreements;
      c. Plaintiff may also file a notice and motion before the Court to vacate the dismissal and enter judgment on the remaining balance due plus interest, attorney fees and costs incurred in enforcing this agreement against all defendants, jointly and severally;
      d. In the event of any material breach, Plaintiff shall be awarded her reasonable attorney fees and costs incurred in enforcing this agreement and in collecting on this agreement or on any judgment entered pursuant to this agreement.

1.6    The above stated Settlement Payment shall fully resolve and satisfy all amounts to be paid to Plaintiff for any alleged back wages, liquidated and/or treble damages, damages of any kind, and any attorneys' fees and costs.

**Tax Characterization of the Settlement Payment.**

The portion of the Settlement Payment to Plaintiff identified in Sections 1.1(b) shall be treated as alleged relief for attorney fees, costs, liquidated, treble, or other damages or penalties under the FLSA or IMWL. This payment shall be made without withholding and be reported to the Internal Revenue Service ("IRS") and to Plaintiff on an IRS Form 1099, misc box 3.

1.7    **Tax Liability**

The Parties and their Counsel make no representations as to the taxability of any portions of the settlement payments to Plaintiff, the payment of any costs, expenses or award of attorneys' fees, or any payment to Plaintiff or Plaintiff's Counsel. Neither Plaintiff's Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such. All parties have been advised to seek advice from their accountant.

**2.    JUDICIAL APPROVAL**.

The Parties will cooperate and take all necessary steps to effectuate prompt judicial approval of this Agreement. It is agreed that unless the Court approves this agreement, agrees to enforce this agreement as set forth above, that it shall be void *ab initio.*

    **2.1**    **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement and dismissal of the Federal Lawsuit as per the above terms and the Proposed Order presented to the Court for dismissal without prejudice until all payments due hereunder are paid in full.

**2.2** **Motion for Court Approval of Settlement.** Within ten (10) business days after the full and complete execution of this Agreement by the Parties, the Parties agree that Defendants' Counsel will file the Parties' "Joint Motion for Court Approval of Settlement and Dismissal of Complaint" with the Court. The filing of this Agreement in conjunction with the Joint Motion for Court Approval of Settlement and Dismissal of Complaint shall not be deemed a violation of any confidentiality or non-disparagement provisions contained within this Agreement.

**2.3** **Entry of Order Approving Settlement and Dismissing the Federal Lawsuit**. If this Agreement is approved by the Court, a final order approving settlement and dismissing the Federal Lawsuit shall be entered as follows:

a. Approving the settlement and the Agreement including the agreed award of attorneys' fees and costs, as fair, reasonable, and adequate;

b. Declaring the Agreement to be binding on the Parties, including the Releases contained herein;

c. Ordering the parties to comply with the terms of this settlement agreement;

d. Reserving Jurisdiction to enforce the terms of this agreement and the breach provisions set forth herein including the Court's contempt power and power to enter judgment, jointly and severally, against the Defendants if they materially breach this agreement as defined herein.

e. Dismissing the Federal Lawsuit and Plaintiff's released claims initially without prejudice with leave to reinstate by February 1, 2025. In the event a motion to reinstate is not filed by February 1, 2025, the dismissal without prejudice will automatically convert to a dismissal with prejudice and case shall be deemed dismissed with prejudice without further order of the Court;

f. Each party to bear their own attorneys' fees, expenses, and costs unless otherwise expressly covered by this Agreement.

**3. GENERAL RELEASE OF CLAIMS AND AFFIRMATIONS.**

**3.2 RELEASE OF ALL CLAIMS BY PLAINTIFF.**

Plaintiff on behalf of herself and her spouse, children, heirs, representatives, executors, administrators, beneficiaries, conservators, attorneys, representatives, and/or assigns, hereby absolutely, unconditionally and irrevocably, forever waives, releases and discharges Defendants, and their affiliates, parents, agents, directors, officers, employees, owners, members, representatives, successors, assigns, attorneys, insurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of such programs), heirs, representatives, executors, legatees, and any other persons acting by, through, under, or in concert with any of the persons or entities described herein, and their successors (hereinafter, "Releasees") to the fullest

4

extent possible from any and all wage and hour claims that accrued while employed by or working for Defendants (or for either Defendant) relating back to the full extent of the applicable statute of limitations and continuing through the entry of approval of this Agreement and dismissal of the Federal Lawsuit, whether known or unknown, including, any and all claims for unpaid wages and/or unpaid overtime wages (whether based upon statutes, ordinances, regulations, federal law, state law, local or municipal law, contract, tort, and/or common law). This release and waiver of claims also includes all claims for any relief or damages, including but not limited to claims for actual, compensatory, or punitive damages, back pay, front pay, unpaid wages, unpaid overtime, unpaid vacation or paid time off, liquidated damages, treble damages, fines or penalties, reinstatement, prejudgment interest, interest, costs, attorneys' fees, expenses, and injunctive or declaratory relief. This release specifically includes a release of any and all claims relating to allegedly unpaid wages and/or overtime, unpaid vacation or paid time off, and related claims for penalties, interest, liquidated damages, treble damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*, the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, and/or any other applicable federal or state wage and hour law, irrespective of whether such claims were asserted in the Federal Lawsuit. The release specifically includes a release of any and all claims that were asserted or could have been asserted in the Federal Lawsuit.

In addition, conditioned upon and by the operation of the Court's approval of this Agreement and dismissal of the Federal Lawsuit, and in exchange for the monetary consideration recited in this Agreement, Plaintiff, on behalf of herself and her spouse, heirs, executors, administrators, representatives, and/or assigns, unconditionally releases, waives, remises, and forever discharges Defendants and the Releasees of and from any and all legally waivable causes of action, suits, debts, charges, complaints, liabilities, obligations, controversies, claims, actions, suits, debts, obligations, covenants, warranties, undertakings, promises, agreements, representations, demands, attorneys' fees, costs and expenses, damages, of any kind, nature or description whatsoever, whether in law or in equity, known or unknown, liquidated or unliquidated, which Plaintiff ever had, may have had, now have, or may ever have in the future, for, based upon, arising from or out of, any event, fact, transaction, occurrence, matter, cause or thing whatsoever occurring prior to the date of this Agreement which she had or now has against Defendants or any of the Releasees, including but not limited to related to or arising from the facts alleged in the Federal Lawsuit and/or her employment with Defendants from the beginning of time and continuing through the entry of approval of this Agreement and dismissal of the Federal Lawsuit whether under local, state, or federal law. Without limiting the preceding, this release includes claims arising out of, or related to, Plaintiff's employment with Defendants and/or any of the Releasees and/or the separation of her employment whether based upon statutes, ordinances, regulations, federal law, state law, local or municipal law, contract, tort, and/or common law. This release includes, but is not limited to, claims alleging any alleged unlawful act, as well as any other claim or cause of action alleging, including without limitation, claims alleging unpaid wages, unpaid vacation or paid time off, untimely payment of wages, any claims related to any employee benefits or payment for such benefits, breach of an express or implied contract, quantum meruit, unjust enrichment, theft of services, fraud, fraud by nondisclosure, negligence (including negligent misrepresentation and negligent hiring, training, or supervision), civil conspiracy, breach of the duty of good faith and fair dealing, harassment, discrimination, hostile work environment,

5

retaliation, wrongful termination, intentional infliction of emotional distress, breach of fiduciary duty, misrepresentation, defamation, slander, or for violation of the state or federal Constitutions or any applicable local or municipal, state and federal labor and employment laws, and regulations, including but not limited to the Equal Pay Act of 1963, the Fair Labor Standards Act (FLSA), the Portal to Portal Act, the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 (Section 1981), the Pregnancy Discrimination Act, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, the Older Worker Benefits Protection Act, the Americans with Disabilities Act of 1990, the Genetic Information Nondiscrimination Act of 2008, and any other employee-protection law (local, state or federal) of any jurisdiction that might apply. This release and waiver of claims also includes all claims for any relief or damages, including but not limited to claims for actual, compensatory, or punitive damages, back pay, front pay, unpaid wages, unpaid overtime, unpaid vacation or paid time off, liquidated damages, treble damages, reinstatement, fines or penalties, prejudgment interest, costs, expenses, attorneys' fees, and injunctive or declaratory relief whether under federal, state, or local law. The release specifically includes a release of any and all claims that were asserted or could have been asserted in the Federal Lawsuit.

Notwithstanding the provisions of the Agreement, nothing herein shall be construed as a release of the Parties' obligations under this Agreement of any claim or right that controlling law clearly states that may not be released or waived. To the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendants or any other Releasee identified in this Agreement is a party.

Plaintiff agrees that she will never institute against Defendants or any Releasee any suit or action at law, in equity or otherwise, in any court or administrative agency, with respect to any claim of any kind, or any other kind of relief, arising from any matter with Defendants and any Releasee from the beginning of time through the effective date of this Agreement, except as may be necessary to enforce the terms of this Agreement.

Plaintiff affirms that upon receipt of her portion of the Settlement Payments, she has been fully and properly compensated for all hours worked during her work for and/or employment with either Defendant in accordance with applicable federal and state law.

Nothing in this Agreement prohibits or prevents Plaintiff from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before the EEOC, NLRB, or a similar agency enforcing federal, state, or local anti-discrimination laws, to the extent that such right to file is not subject to waiver. However, to the maximum extent permitted by law, Plaintiff agrees that if such an administrative claim is made to such an anti-discrimination or other agency, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

**4.     AGREEMENT REGARDING FUTURE EMPLOYMENT.**

Plaintiff agrees not to seek or accept reemployment or work with Defendants or any of the Releasees, and hereby waives any such claims. Plaintiff agrees that Defendants and the Releasees

shall have no obligation to engage her services in any capacity (e.g., employee, contractor, temporary worker or employee, or consultant) in the future and that any application or request for employment or work legitimately and lawfully may be denied solely on the basis of her breach of this provision of the Agreement. Plaintiff acknowledges and agrees that Defendants and the Releasees have no obligation to hire or rehire her, as a result of this negotiated settlement for which she received sufficient consideration.

Plaintiff agrees that if Defendants or any Releasee declines to hire, rehire, or employ her in any capacity or position, she shall not be liable for any damages, including monetary damages. Plaintiff acknowledges that waiver of any such claims, including failure to hire or rehire, is contemplated by this Agreement and acknowledge that any such action is not retaliatory but rather part of a negotiated settlement for which she received sufficient consideration.

**5. VOIDING THE AGREEMENT**

**5.1** If the Court rejects, disapproves, sets aside, or modifies the settlement and/or this Agreement or declines to enter approval in substantially the form submitted by the Parties or overturns or modifies any judgment agreed upon by the Parties, unless the Parties agree in writing, this Agreement shall be void *ab initio.*

**6. MUTUAL COOPERATION**

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff and Plaintiff's Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

**7. NO ADMISSION OF LIABILITY**.

The Parties understand, represent, and warrant that this Agreement is a full and final compromise of disputed claims and not an admission of wrongdoing or liability by or on behalf of any Party to this Agreement. It is understood that Defendants specifically deny any liability whatsoever for any alleged violation.

Defendants deny all of the allegations made by Plaintiff in the Federal Lawsuit and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Federal Lawsuit. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants agree to settle the Federal Lawsuit on the terms and conditions set forth in this Agreement. Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by Defendants.

Plaintiff agrees and acknowledges that this Agreement is not, and shall not be alleged by them, or construed by anyone, to be an admission of any violation of any federal, state, or local statute, ordinance, or regulation, of the common law of any jurisdiction, of any duty owed by Defendants and/or the Releasees to Plaintiff, or of any wrongdoing by Defendants and/or the Releasees whatsoever and that the sole purpose of this Agreement is to avoid the cost of further litigation.

**8. NOTICES**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, and email, addressed as follows:

| To Plaintiff: | To Defendant: |
|---|---|
| Glenn Gaffney | Ethan Zelizer |
| Gaffney & Gaffney PC | HR LAW COUNSEL, LLC |
| 1771 Bloomingdale Road | 29 S. Webster St., Suite 350-C |
| Glendale Heights, IL 60139 | Phone: (630) 551-8374 |
| Phone: (630) 462-1200 | e-mail: ethan@hrlawcounsel.com |
| Email: glenn@gaffneylawpc.com | |

**10. COMPLETE AGREEMENT AND INTEGRATION**.

This Agreement sets forth all of the terms and conditions of the agreement between the Parties concerning the subject matter hereof and any prior oral communications are superseded by this Agreement. The Parties understand and agree that all of the terms and promises of the Agreement are contractual, material, and not a mere recital. This Agreement supersedes any and all prior agreements, understandings and communications between the Parties.

Plaintiff acknowledges that neither Defendants (nor the Releasees) nor their agents or attorneys made any promise, representation, or warranty whatsoever, either express or implied, written or oral, other than the express written representations in the Agreement. Plaintiff understands that this Agreement (and its terms) are final and binding when it is executed, and further agrees not to challenge or object to the Agreement's enforceability, or the enforceability of any of its terms, thereafter subject to Court approval of this Agreement.

**11. NON-ADMISSIBILITY IN ANY OTHER PROCEEDING.**

Nothing in this Agreement, nor any action taken in implementation thereof, nor any statements, discussions, or communications exchanged in negotiations leading to the Agreement, are intended by the Parties to, nor shall they, constitute, be introduced, be used, or be admissible in any way in other action, or in any other judicial, arbitral, administrative, investigative, or other proceeding whatsoever kind or nature as evidence of any violation of the common law of any jurisdiction; any

federal, state, or local law, statute, ordinance, regulation, rule or executive order; or any obligation or duty at law or in equity. Notwithstanding the foregoing, the Agreement may be used by the Parties in any proceeding to enforce the Agreement or in defense of all claims released or barred by this Agreement.

13. **MISCELLANEOUS TERMS.**

    13.1 Authority to Execute. Each Party represents and warrants that such Party, or the person signing this Agreement on their behalf, is over the age of eighteen, is of sound mind, maintains the requisite authority, and is otherwise competent to execute this Agreement on behalf of the Party.

    13.2 **Neutral Reference.** In the event any prospective employers or entities seeking to engage Plaintiff as an independent contractor or hire Plaintiff as employee reach out to Defendants seeking a reference, Defendants will simply confirm Plaintiff's tenure of work and job position.

    13.3 **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

    13.4 **No Assignment**. Plaintiff represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim nor any portion thereof or interest therein, including, but not limited to, any interest in the Federal Lawsuit and any attempt to do so shall be of no force or effect.

    13.5 **Attorneys' Fees and Costs.** Each Party shall bear their or its own costs, expenses, and attorneys' fees in connection with the Federal Lawsuit and this Agreement, except as otherwise set forth in this Agreement.

    13.6 **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Plaintiff, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

    13.7 **Governing Law**. The validity, construction, interpretation, effect, and enforceability of this Agreement shall be governed by the laws of the State of Illinois without regard to conflicts of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

    13.8 **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. All parties participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not

intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**13.9** **Counterparts**. This Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of the other Parties and all of which taken together shall constitute one and the same Agreement.

**13.10** **Facsimile, Electronic and E-mail Signatures**. Any Party may execute this Agreement by signing or by e-signature on the designated signature block below and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other Party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile, e-signature, or e-mail.

**13.11** **Waivers, Amendments, and Modifications to Be in Writing**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**13.12** **Severability**. Whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule, such invalidity, illegality, or unenforceability will not affect any other provisions, but this Agreement will be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had not been contained in the Agreement.

**14.** **ACKNOWLEDGMENT**. The Parties declare that they have completely read this Agreement and acknowledge that it is written in a manner calculated to understand. The Parties further state and declare that they do fully understand its terms, conditions, and contents, including all rights and obligations hereunder, and freely, voluntarily and without coercion enter into this Agreement. Further, each Party agrees, states, and declares that they have had the full opportunity to investigate all matters pertaining to any claim or defense in connection with the Federal Lawsuit and in connection with the settlement of the Federal Lawsuit.

[INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, and intending to be legally bound by this Agreement, the Parties hereto have caused this Agreement to be executed as of the date indicated below:

*Galena Lopez*
_____
   Galena Lopez

Dated: March 14, 2024

S&S Logistics, Inc

Rafal D. Cymerkiewicz____

Address: 6262 IL-83, Willowbrook, IL 60527

Dated: March 18, 2024

*Rafal D. Cymerkiewicz*
_____

RAFAL D. CYMERKIEWICZ

Address: 6262 IL-83, Willowbrook, IL 60527

Dated: March 18, 2024

*Sebastian D. Powroznik*
SEBASTIAN D. POWROZNIK

Address: 6262 IL-83, Willowbrook, IL 60527

Dated: March 18, 2024

*Nenad C. Jovanovikj*
NENAD C. JOVANOVIKJ

Address: 6262 IL-83, Willowbrook, IL 60527

Dated: March 18, 2024


*Verce Koceva*
VERCE KOCEVA

Address: 6262 IL-83, Willowbrook, IL 60527

Dated: March 18, 2024

Case: 1:22-cv-04305 Document #: 54-1 Filed: 03/19/24 Page 12 of 12 PageID #:283